IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARSHAL T. SIMPSON TRUST, DONALD S. SIMPSON TRUST, and CHRISTOPHER BOYD, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civ. No. 16-173-SLR |
| v. | ) ) | |
| INVICTA NETWORKS, INC., VICTOR SHEYMOV, WILLIAM ESREY, ROBERT J. HALLMAN, and R. JAMES WOOLSEY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Peter B. Andrews, Esquire, Craig J. Springer, Esquire, and David M. Sborz, Esquire of Andrews & Springer LLC, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Matthew L. Dameron, Esquire of Williams Dirks Dameron LLC, Kansas City, Missouri.

Kurt M. Heyman, Esquire and Dominick T. Gattuso, Esquire of Proctor Heyman Enerio LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Mark A. Thornhill, Esquire and Angus Dwyer, Esquire of Spencer Fane LLP, Kansas City, Missouri.

Dated: April _19_, 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

I. INTRODUCTION

Plaintiffs Marshal T. Simpson Trust, Donald S. Simpson Trust, and Christopher Boyd (collectively, "plaintiffs") are shareholders of Invicta Networks, Inc. ("Invicta"), a company in the field of cyber-security technology no longer operating as a going concern. (D.I. 1 ¶ 66; DI. 51 at 1) During some or all of the relevant time period, Invicta's board of directors was comprised of defendants Victor Sheymov ("Sheymov"), William Esrey ("Esrey"), Robert J. Hallman ("Hallman"), and R. James Woolsey ("Woolsey").[1] (D.I. 51 at 1) Sheymov also served as Invicta's president, chief executive officer, and chairman of the board. (D.I. 1 ¶ 7).

Perceiving Invicta to be a "failed" business, plaintiffs filed a complaint on November 14, 2014 asserting various claims against different combinations of defendants. (D.I. 1) Defendants Esrey, Hallman, and Woolsey (collectively, the "director defendants") have moved to dismiss any claims or parts of claims asserted against them. (D.I. 50) Those claims include count 1 against all defendants for breach of fiduciary duty, count 2 against all defendants for negligence, count 7 against Esrey for fraud, and count 8 against Esrey for negligent misrepresentation. (D.I. 1 ¶¶ 93-104, 137-52) The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). For the reasons discussed below, the director defendants' motion to dismiss is granted.

---

[1] At some point Esrey resigned, although it is unclear when. (D.I. 1 ¶ 75)

## II. BACKGROUND

Invicta's initial product InvisiLAN provided network computer security technology that Invicta intended to market to government and corporate clients. (D.I. 1 ¶¶ 13-14) Invicta developed a similar product called WizArmor intended for individual consumers. (*Id.* at ¶ 15) In 2006, representatives of Invicta, including Sheymov, solicited Marshal Simpson for investments in the company. (*Id.* at ¶ 19) Marshal Simpson shared the information he received with Donald Simpson and Christopher Boyd. (*Id.* at ¶ 34) After receiving additional information about Invicta, Donald Simpson, on behalf of the Donald S. Simpson Trust, invested in Invicta in January 2007. (*Id.* at ¶ 44) Marshal Simpson, on behalf of the Marshal T. Simpson Trust, and Christopher Boyd invested in Invicta in January 2009. (*Id.* at ¶ 61-62)

Throughout 2011, plaintiffs received various updates about Invicta's product development, marketing, and sales. (*Id.* at ¶¶ 65-70) Sheymov stated that the past year had been "very disappointing." (*Id.* at ¶ 68) In May 2013, Sheymov emailed Marshal Simpson that Invicta continued to be ignored, and he was considering leasing or selling the company's intellectual property. (*Id.* at ¶ 75) In September 2013, Sheymov emailed Marshal Simpson that WizArmor was no longer available due to lack of funds to support distribution. (*Id.* at ¶ 76) Sheymov added that he was in discussions with a buyer for Invicta. (*Id.*) In October 2013, Sheymov emailed Marshal Simpson that he was still working on a sale of Invicta and there were no other activities at the company at that time. (*Id.* at ¶ 80) Plaintiffs filed their complaint almost a year later alleging fraud, negligent misrepresentation, and breach of fiduciary duty. (D.I. 1)

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 678. Finally, the court must accept "as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

## IV. DISCUSSION

The director defendants have moved to dismiss the counts asserted against them based on the failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the failure to join an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7), the failure to plead demand futility pursuant to Fed. R. Civ. P. 23.1, and untimeliness under the applicable statute of limitations. (D.I. 51) The court need not address each of these arguments as it is sufficient grounds to dismiss counts 1 and 2 for failure to plead demand futility and counts 7 and 8 for failure to state a claim.

### A. Counts 1 and 2: Breach of Fiduciary Duty

Count 1 (for breach of fiduciary duty) and count 2 (for negligence) are identical in all respects, except count 2 drops the word "fiduciary" and labels the claim "negligence." (D.I. 1 ¶¶ 93-104) Count 2 states that defendants, "as officers and directors of Invicta," "owed duties to Plaintiffs in their capacity as shareholders of the company," and "[s]uch duties include, but are not limited to, care in the oversight of the company." (*Id.* at ¶

3

100) Accordingly, count 2 is a duplicative breach of fiduciary duty claim. The parties dispute whether plaintiffs' breach of fiduciary duty claims are direct or derivative. If the claims are derivative, then they must be dismissed for failure to plead demand futility as required by Fed. R. Civ. P. 23.1. (D.I. 51 at 9-10)

Under Delaware law, whether a fiduciary duty claim is direct or derivative turns on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[2] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Plaintiffs claim that the director defendants breached their fiduciary duties by "fail[ing] to exercise diligence and oversight." (D.I. 1 ¶¶ 94-95, 100-01) A claim that directors failed to provide "competent and active management" is essentially a claim for mismanagement, which is "a paradigmatic derivative claim." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *13 (Del. Ch. Mar. Aug. 26, 2005); *Feldman v. Cutaia*, 951 A.2d 727, 734–35 (Del. 2008) (mismanagement resulting in a decrease in the value of stock is a derivative claim); *see also South v. Baker*, 62 A.3d 1, 14 (Del. Ch. 2012) (explaining why an oversight claim, or *Caremark* claim, is subject to the demand requirement). Accordingly, counts 1 and 2 are derivative, not direct, claims.

Plaintiffs argue that counts 1 and 2 are direct, because non-disclosure claims are direct. (D.I. 54 at 12) Although non-disclosure claims generally are direct,[3] counts 1

---

[2] Although federal law governs the pleading standard, Delaware law governs the substantive requirements of a derivative claim, including the demand requirement. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95–97 (1991).

[3] *See Albert*, 2005 WL 2130607 at *12 ("Generally, non-disclosure claims are direct claims").

4

and 2 do not allege that the director defendants breached their fiduciary duties by failing to disclose material information to shareholders. (*See* D.I. 1 ¶¶ 93-104) Rather, counts 1 and 2 allege that the director defendants "fail[ed] to exercise diligence and oversight over the company's officers and agents, including in matters where those individuals made representations concerning the company." (*Id.* at ¶¶ 95, 101) Delaware courts have found that "any harm stemming from... oversight failures that allowed [the company] to make material misstatements ... accrues to [the company] itself and to its stockholders only indirectly," making those claims derivative, not direct. *Sandys v. Pincus*, 2016 WL 769999, at *5 (Del. Ch. Feb. 29, 2016), *rev'd on other grounds*, 152 A.3d 124 (Del. 2016).

Plaintiffs also argue that their derivative claims became direct when Invicta's corporate status became void for failure to pay franchise taxes. (D.I. 54 at 13) However, the case on which plaintiffs rely for this proposition is inapposite. In *Gentile v. Rossette*, the corporation was not void for failure to pay to taxes, but ceased to exist entirely after it merged into another corporation. 906 A.2d 91, 103 (Del. 2006). Under well-established Delaware law, derivative claims do not normally become direct when a corporation has consummated a merger. Instead, under the continuous ownership rule, derivative plaintiffs lose standing, because a derivative claim is an assert of the corporation that, like all assets of a corporation in a merger, passes to the surviving corporation which then has the sole right to prosecute the claim. *Feldman*, 951 A.2d at 731; *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984). There are two limited exceptions to the general "loss-of-standing" rule, neither of which plaintiffs have invoked. *See Ark. Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del.

2013) (reaffirming that the two exceptions are: (i) "where the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of their standing to bring or maintain a derivative action"; and (ii) "where the merger is essentially a reorganization that does not affect the plaintiff's relative ownership in the post-merger enterprise").

In *Gentile*, plaintiff did not invoke an exception to the loss-of-standing rule. Instead, the Delaware Supreme Court found that the plaintiff had alleged claims that fit within an "expropriation" paradigm that Delaware case law recognizes as being both direct and derivative. *Id.* at 99. In those cases, plaintiffs must show that: (1) a controlling stockholder caused the corporation to issue shares of its stock in exchange for consideration of lesser value, and (2) as a result, there is an increase in the controlling stockholder's percentage of ownership that corresponds to a decrease in the minority stockholders' percentage of ownership. *Gentile*, 906 A.2d at 99-100; *Gatz v. Ponsoldt*, 925 A.2d 1265, 1274 (Del. 2007). Plaintiffs have not alleged facts that fit within this "expropriation" paradigm.

Ultimately, plaintiffs do not allege that Invicta has consummated a merger, declared bankruptcy, or entered into dissolution, only that its status is void for failure to pay franchise taxes and that the company is no longer operating as a going concern. Courts interpreting Delaware law have rejected arguments that plaintiffs may bring their derivative claims directly when a corporation is "no longer operating as a going concern." *See Winer Family Trust v. Queen*, 503 F.3d 319, 338 (3d Cir. 2007); *see also Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 9437530, at *2-3 (D. Del. Dec. 22, 2015) (rejecting plaintiff's argument that derivative claims had become direct

because alternative entity had dissolved). For all of these reasons, plaintiffs have not shown that their derivative claims should be reclassified as direct just because Invicta's corporate status is void for failure to pay franchise taxes. Under Fed. R. Civ. P. 23.1, a complaint asserting derivative claims must plead with particularity either that demand was made and wrongfully refused or why demand is excused as futile. Here, the complaint contains no such allegations. Accordingly, counts 1 and 2 are dismissed for failure to comply with Fed. R. Civ. P. 23.1.

### B. Counts 7 and 8: Fraud and Negligent Misrepresentations

The complaint alleges that between December 2008 and November 2012, Esrey sent four emails to Marshal Simpson. On December 27, 2008, Esrey sent an e-mail providing updates on potential sales and product testing. (D.I. 1 ¶ 48) On April 14, 2009, Esrey sent an email stating that Sheymov "has solved the scale issue" and that the company was continuing to work on potential sales. (*Id.* at ¶ 65) Early on November 1, 2012, Esrey forwarded information about the company's status that he had received from Sheymov. (*Id.* at ¶¶ 68, 71-72) Later on that same day, Esrey sent a second email reaffirming an earlier statement that all questions about Invicta should be directed to Sheymov. (*Id.* at ¶ 73) For each email, the complaint alleges that "several of the assertions contained [therein] . . . were not true" without identifying which specific ones. (*Id.* at ¶¶ 49, 81, 140).

Based on these emails, plaintiffs claim Esrey is liable for fraud (count 7) and negligent misrepresentation (count 8). Plaintiffs do not dispute the director defendants' assertion that Missouri law governs these claims. (D.I. 51 at 17-19). Under Missouri law, the elements of fraud are: "(1) a representation; (2) its falsity; (3) its materiality; (4)

7

the speaker's knowledge of its falsity, or his ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Trimble v. Pracna*, 167 S.W.3d 706, 712 n. 5 (Mo. 2005).

The court finds that plaintiffs have failed to state a claim for fraud. In contravention of Fed. R. Civ. P. 8(a), count 7 is nothing more than a threadbare recital of the elements of a cause of action. The complaint contains no factual basis to support its conclusory assertion that the false statements were material and no allegations from which it could be plausibly inferred that Esrey made the statements with the intent to induce action (or inaction) by plaintiffs in reliance. Indeed, it is notable that, while all three plaintiffs assert this fraud claim against Esrey, the complaint alleges that Esrey sent his e-mails only to Marshal Simpson and Marshal Simpson passed the information on to other plaintiffs. (D.I. 1 ¶¶ 48, 65, 72, 73) In addition, under Fed. R. Civ. P. 9(b), the complaint must allege the "who, what, when, where and how" of each fraudulent misrepresentation. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Plaintiffs, however, fail to identify which statements within the four e-mails were false, let alone "how" or "why." Accordingly, count 7 for fraud must be dismissed for failure to state a claim.

The elements of negligent misrepresentation in Missouri are: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was

8

intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010). Like count 7, count 8 is nothing more than a threadbare recital of the elements of a cause of action, except plaintiffs have failed to make even conclusory assertions that Esrey provided the information "in the course of his business" and "the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction." Accordingly, count 8 for negligent misrepresentation must be dismissed for failure to state a claim.

## V. CONCLUSION

For the foregoing reasons, the director defendants' motion to dismiss (D.I. 50) is granted. Those portions of counts 1 and 2 asserted against the director defendants and all of counts 7 and 8 are dismissed without prejudice.