**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**


| | | |
|---|---|---|
| **MARSHAL T. SIMPSON TRUST,** *et al.* | : | CIVIL ACTION |
| | : | |
| **v.** | : | |
| | : | NO. 16-173 |
| **INVICTA NETWORKS, INC.** *et al.* | : | |


**MEMORANDUM**

**KEARNEY, J.**                                                                                    **October 18, 2017**


Outside investors in Delaware corporations are entitled to accurate information concerning the corporation before the investment and in communications sent during the investment. But they cannot ignore warnings and then wait for years before filing suit challenging the truth of representations made several years ago. As shareholders of a Delaware corporation, they can seek the corporation's books and records and if rebuffed, file a summary lawsuit allowing expedited review of records which may assist in understanding ongoing operations. When finally filing suit for fraud and presumably based on facts provided by the corporation - voluntarily or involuntarily - the investors must plead facts showing us why they did not or could not have sued within the statute of limitations and describing their reliance on specific representations causing them to lose money. When the investors fail to meet these well-known pleading requirements and admit they can plead no further facts absent discovery, we must enter the accompanying Order dismissing their claims with prejudice.

## I.     Alleged facts.

On November 11, 2014, investors Marshal T. Simpson Trust, Donald S. Simpson Trust, and Christopher Boyd (collectively "Investors") sued Invicta Networks, Inc. ("Invicta"), its board of directors William Esrey, Robert Hallman, R. James Woolsey ("Directors"), and Victor

Sheymov as Invicta's, President, Chief Executive Officer and Chairman in the United States District Court for the Western District of Missouri alleging breach of fiduciary duty, negligence, fraud, and negligent misrepresentation.[1] The Simpson Trusts and Mr. Boyd allege they relied on misrepresentations made by Invicta, its Directors, and CEO Sheymov in deciding whether to invest in the company.[2]

Invicta is a Delaware corporation with its principal place of business in Virginia.[3] Mr. Sheymov is a Virginia resident.[4] Invicta began as a computer security company and developed two security products, InvisiLAN and WizArmor.[5]

### A. Mr. Sheymov and Invicta's private placement memorandum followed by Donald Simpson's investment in January 2007.

In July 2006, Invicta and Mr. Sheymov began soliciting investments from Marshal Simpson in Missouri.[6] On July 17, 2006, Invicta sent Marshal Simpson an email touting Invicta's InvisiLAN technology as "unhackable."[7] Two days later, Mr. Sheymov sent a similar email to Marshal Simpson regarding InvisiLAN technology and attached an Executive Summary, an E-brochure, and Invicta's business plan.[8]

Invicta's business plan promoted the InvisiLAN product as "unhackable;" claimed "numerous tests by [the] world's most capable attackers from governments and industry produced no penetrations;" "no attacker was able to penetrate beyond the first layer of InvisiLAN's multiple layers of protection;" and "several patents have been granted and more are pending and contemplated."[9] Marshal Simpson shared the materials with Donald Simpson and Christopher Boyd.[10]

On January 31, 2007, Invicta gave its private placement memorandum to Donald Simpson.[11] Invicta's private placement memorandum referred to two independent valuations, and

attached unaudited financial statements, including summary balance sheets showing its projected total revenue, actual total liabilities, and expected equity contributions.[12]

Based on the representations in Invicta's private placement memorandum, financial statements, and other solicitation documents provided to Marshal Simpson in 2006, Donald Simpson invested $400,000 in Invicta in late January 2007.[13] In November 2014, the Investors allege representations in these documents are false.[14]

### B. Mr. Sheymov, Mr. Esrey, and Invicta's private placement memorandum and Marshal Simpson's and Mr. Boyd's investments in 2009.

On June 27, 2008, Donald Simpson emailed Mr. Sheymov asking for an update on Invicta.[15] In response, Mr. Sheymov reported InvisiLAN "has been certified by the Russian government which makes sales prospects there good;" he "expected orders from them soon . . . progressing to significant numbers during the next year;" the United States government "agreed to buy a small complex of InvisiLAN," a sale he expected to complete within two to three weeks; and the United States government "expressed interest in a new InvisiLAN based product" which "we are in the process of rapidly developing" within several weeks.[16]

Based on earlier materials he received and after Donald Simpson's investment, Marshal Simpson began discussions with Invicta about possible investment.[17] On December 27, 2008, Mr. Esrey emailed Marshal Simpson, stating Invicta "received the money from Russia" and a "mid western electric utility."[18] In November 2014, the Investors allege the representations in the emails are false.[19]

On January 13, 2009, Invicta sent Marshal Simpson and Mr. Boyd a private placement memorandum dated January 12, 2009 to solicit investors for the private offer and sale of the company's common stock.[20] The 2009 private placement memorandum stated "several test and pilot platform systems are being tested by various entities for specific applications;" "first

shipping orders were made both domestically and internationally" which "may lead to significant increase in revenues in the next 12-24 months;" the development of computer security technology by a subsidiary of Invicta; and made representations about the value of Invicta based on independent valuations.[21]

In January 2009, Marshal Simpson invested $150,000 in Invicta and another $1,000 in November 2009. Mr. Boyd invested $50,000 in January 2009.[22] In November 2014, the Investors allege representations made in the 2009 private placement memorandum are false.[23]

**C. Invicta's 2011 and 2012 representations.**

In March 2011, Mr. Sheymov emailed Invicta shareholders, including Marshal Simpson, Donald Simpson, and Mr. Boyd, announcing Invicta's spin-off of two subsidiaries, Wiz Enterprises and CyPhone Technologies, Inc.[24] Mr. Sheymov represented stock certificates would be issued "at a later date, but your ownership record is in the companies' books."[25] The Simpsons and Mr. Boyd never received stock certificates for the subsidiaries.[26]

In late 2011, the Simpsons asked Mr. Sheymov for an update on Invicta. Mr. Sheymov responded on October 1, 2011 outlining the company's disappointing performance but did not disclose Invicta's security products previously touted as "unhackable" were compromised.[27] In a November 3, 2011 Bloomberg article, Mr. Sheymov admitted a group of college students hacked into one of Invicta's systems.[28]

A year later, on November 1, 2012, Marshal Simpson asked Mr. Esrey "Is Invicta still in business?"[29] Mr. Esrey responded by forwarding Mr. Sheymov's October 1, 2011 email and directing all communication to Mr. Sheymov.[30] A few days later, Donald Simpson emailed Mr. Sheymov requesting Invicta's financial records.[31] Mr. Sheymov responded with the same

October 1, 2011 email and, in response to the request for financial records, reported Invicta lacked money to pay for accounting services.[32]

### D. Mr. Sheymov's October 4, 2013 email.

In May 2013, Marshal Simpson emailed Mr. Sheymov asking for an update on Invicta. Mr. Sheymov responded "not much has happened since the last update" and reported "various government agencies" offered money to companies to develop what Invicta already developed, and expressed frustration "we are just being ignored and nothing I can do about it [sic]."[33] Mr. Sheymov stated "I still think that under the circumstances the only feasible option is either to lease or to sell the company's intellectual property."[34] Mr. Sheymov reported one European company is interested in leasing and he "hear[d]" Intel/McAfee "is still a possibility."[35] Mr. Sheymov told Marshal Simpson he would let him know of any significant development.

Several months passed, and Marshal Simpson emailed Mr. Sheymov with questions regarding Invicta and "press his case for a potential customer" for Invicta's products.[36] In November 2014, the Investors allege Mr. Sheymov "resisted these efforts."[37] Marshal Simpson demanded a conference call with Mr. Sheymov to explain the status of the company.[38]

Mr. Sheymov responded on October 4, 2013, stating "I am working on a sale of Invicta. There are no other activities at the company at this time."[39] The Investors allege they did not discover, and could not have reasonably discovered, Defendants' malfeasance until Mr. Sheymov's October 4, 2013 email.[40] Investors allege Mr. Sheymov's representations from April 14, 2009 to October 4, 2013 were false, and made to either induce additional investments or guarantee continued ownership of Invicta shares.[41]

### E. Investors' abandoned demand for information.

Before filing his complaint, Marshal Simpson made a Section 220[42] demand under Delaware law for Invicta's books and records.[43] Marshal Simpson revised and narrowed his Section 220 demand after Mr. Sheymov responded "the demand was too voluminous."[44] According to the Investors, Mr. Sheymov did not respond to the 220 demand.[45] Inexplicably, Mr. Simpson abandoned his demand for records. Instead, the Investors filed suit in the United States District Court for the Western District of Missouri in November 2014 without the requested information.

### F. Transfer from Missouri to Delaware and Judge Robinson's dismissal of claims against the Directors.

In Missouri, Directors Esrey, Hallman, and Woolsey moved to dismiss the breach of fiduciary duty and negligence claims against them and Mr. Esrey moved to dismiss the fraud and negligent misrepresentation claims against him. The Missouri district court granted the motion to dismiss in part, finding it did not have personal jurisdiction over Messrs. Hallman and Woolsey.[46] The Missouri district court then granted Plaintiffs' motion to transfer the case under 28 U.S.C. § 1406(a) to the District of Delaware.[47]

After transfer, the Directors again moved to dismiss under Rule 12(b)(6) before Judge Robinson.[48] On April 19, 2017, Judge Robinson granted their motion dismissing the breach of fiduciary duty and negligence claims against Directors Esrey, Hallman, and Woolsey and the fraud and negligent representation claims against Mr. Esrey without prejudice.[49] Admitting they had no further information, the Investors never amended their complaint.

On May 24, 2017, Judge Robinson ordered the Investors to serve Mr. Sheymov and move for default judgment against Invicta.[50] Upon reassignment, we granted the Investors' motion for default judgment and, after Invicta and Mr. Sheymov filed an unopposed motion to vacate

default judgment, vacated the default judgment.[51] Invicta and Mr. Sheymov then moved to dismiss.

## II.    Analysis[52]

Invicta and Mr. Sheymov move to dismiss the Investors' breach of fiduciary duty and negligence claims[53] and the fraud and negligent misrepresentation claims.[54] Invicta and Mr. Sheymov argue Judge Robinson's April 19, 2017 Order dismissing the breach of fiduciary duty and negligence claims against Directors Esrey, Hallman, and Woolsey are law of the case and the fraud and negligent misrepresentation claims are time barred and fail to meet the specificity required by Federal Rules of Civil Procedure 9(b) and 8(a).

### A.    Investors do not contest dismissal of their breach of fiduciary duty and negligence claims.

Invicta and Mr. Sheymov argue Judge Robinson's memorandum opinion dismissing Directors Esrey, Hallman, and Woolsey from the breach of fiduciary duty and negligence claims is law of the case.[55]  In her opinion, Judge Robinson found the negligence claim duplicative of the breach of fiduciary duty claim; the fiduciary duty claim is derivative; and the Investors failed to plead they made a demand or futility of demand required by Federal Rule of Civil Procedure 23.1.  Judge Robinson dismissed the breach of fiduciary duty and duplicative negligence claim without prejudice. The Investors elected not to amend their complaint candidly telling us during oral argument of no additional facts available to them to amend.

The Investors do not contest dismissal of their breach of fiduciary duty and negligence claims.[56]

### B. We dismiss the fraud and negligent misrepresentation claims.

Invicta and Mr. Sheymov argue the Investors' fraud and negligent misrepresentation claims must be dismissed because they are time-barred and they fail to meet pleading standards of Rules 9(b) and 8(a). We agree.

#### 1. Investors' claims are time-barred under Delaware's choice-of-law rules.

Invicta and Mr. Sheymov contend the law of four different states and their statutes of limitations could apply to the Investors' fraud and negligent misrepresentation claims:

- Delaware, where Invicta is incorporated, has a three-year statute of limitations;[57]

- Virginia, where Mr. Sheymov resides and the location of Invicta's principal place of business, has a two-year statute of limitations;[58]

- Kansas, where Donald Simpson and Mr. Boyd reside, has a two-year statute of limitations;[59] and

- Missouri, where Marshal Simpson resides, has a five-year statute of limitations from the date a cause of action accrues which is either when the fraud is discovered or ten (10) years after the fraud takes place, whichever occurs first.[60]

As a federal court sitting in diversity, we apply the choice-of-law rules of Delaware as the forum state.[61] "Under Delaware's choice-of-law rules, a statute of limitations is procedural, not substantive."[62] Delaware law "generally determines whether an action is barred by the statute of limitations."[63] Delaware's choice-of-law rules include a borrowing statute which modifies this general rule.[64] When a cause of action arises outside of Delaware, the borrowing statute applies the shorter of Delaware's statute of limitations and the statute of limitations of the place where the claim arose:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. ….[65]

If the Investors' claims arose in Delaware, the borrowing statute does not apply; by its terms, the statute applies "where a cause of action arises outside this State."[66] If the cause of action arose in Virginia or Kansas, a two-year statute of limitations applies and, under the borrowing statute, we would apply the shorter statute. If the cause of action arose in Missouri, we would apply Delaware's three-year statute of limitations because it is shorter than Missouri's five-year statute.

The last investment made by Marshal Simpson occurred in November 2009, after making his initial January 2009 investment. Donald Simpson invested in January 2007 and Mr. Boyd invested in January 2009. Applying Delaware's three-year statute of limitations to the last investment, the complaint must have been brought by November 2012. Investors did not sue until November 2014. The Investors' fraud and negligent misrepresentation claims are time-barred unless tolled.

### 2. Delaware's tolling doctrines do not apply as pleaded.

The Investors argue the question of which state's statute of limitations applies is irrelevant because Delaware allows for tolling under the discovery rule. They allege the earliest possible date they could have discovered Defendants' fraud and misrepresentations occurred through Mr. Sheymov's October 4, 2013 email: "I am working on a sale of Invicta. There are no other activities at the company at this time."

We examine three tolling doctrines under Delaware law[67]: (1) inherently unknowable injuries; (2) fraudulent concealment; and (3) equitable tolling.[68] A plaintiff bears the burden of showing the statute of limitations is tolled, and "relief from the statute extends only until the plaintiff is put on inquiry notice."[69] "No theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong."[70]

Inquiry notice exists "when person person[s] of ordinary intelligence and produce [have facts sufficient to place them] on inquiry which, *if pursued*, would lead to the discovery of the injury."[71] A plaintiff is "on inquiry notice if [he] is in possession of facts sufficient to make [him] suspicious, or that ought to make [him] suspicious."[72] While the "plaintiff-friendly inferences" required of a Rule 12(b)(6) analysis applies to the timeliness of claims, it "does not govern assertion of tolling exceptions to the operation of a statute of limitations" . . . and a plaintiff "asserting a tolling exception must plead facts supporting the applicability of that exception."[73]

"Inherently unknowable injuries" applies "where it would be practically impossible for a plaintiff to discover the existence of a cause of action."[74] "No objective or observable factors may exist that might have put the plaintiffs on notice of an injury, and the plaintiffs bear the burden to show that they were 'blamelessly ignorant' of both the wrongful act and the resulting harm."[75]

The fraudulent concealment doctrine applies where a defendant "fraudulently conceal[s] from a plaintiff the facts necessary to put him on notice of the truth."[76] "Under this doctrine, a plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth."[77]

Equitable tolling applies "while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary" until the "investor 'knew or had reason to know of the facts constituting the wrong.'"[78]

The Investors argue we may not dismiss because they pleaded the elements of all three Delaware tolling doctrines. Mr. Sheymov and Invicta disagree, arguing the Investors have the burden to plead tolling with particularity and they failed to do so, making only conclusory allegations. We find the Investors did not meet their burden.

### a. Inherently unknowable injuries

The Investors argue they relied on Mr. Sheymov's representations as Invicta's President, CEO, and board member, and they repeatedly sought information from Mr. Sheymov concerning Invicta's affairs and he repeatedly assured them "the company was fine" all while refusing to provide information on Invicta's finances.  Investors contend "Defendants" refused to provide them with information as evidenced by: their Section 220 demand at some unspecified time before filing their November 2014 complaint and never received documents; Mr. Sheymov's October 1, 2011 email providing Donald Simpson an update on Invicta; Mr. Esrey's November 1, 2012 email providing Marshal Simpson with the same October 1, 2011 Sheymov email; Mr. Sheymov's November 12, 2012 email to Donald Simpson reporting there are not enough funds to pay for accounting services to compile Invicta's financial reports; and, Mr. Sheymov's October 4, 2013 email.[79] Investors contend they justifiably relied on Mr. Sheymov's and Invicta's representations and had "no objective basis to believe they were engaged in deception" until Mr. Sheymov's October 4, 2013 email where he "finally concede[d]": "There are no other activities at the company at this time."

The Investors do not plead facts allowing us to apply the "inherently unknowable injuries" tolling doctrine.  Investors made a Section 220 demand before November 2014 and, when they did not receive a response, abandoned their demand. They fail to explain why.  Mr. Sheymov's October 1, 2011 email told Donald Simpson "[t]he past year was very disappointing;" "funding is tied up . . . with not much progress in sight;" and "[o]verall, given the realities of government, economy, and the industry, we are looking into a possibility of selling the companies/technologies." This email is far more ominous than the October 2013

email when Mr. Sheymov said: "I am working on a sale of Invicta. There are no other activities at the company at this time."

Investors fail to allege how it would have been "practically impossible" to discover fraud and negligent misrepresentation claims against Invicta and Mr. Sheymov and how the October 1, 2011 email did not put them on inquiry notice. Investors fail to allege how they relied on any representations made by Mr. Sheymov before October 4, 2013. Investors have not come close to meeting their burden their injuries were not inherently unknowable before October 4, 2013. They had the same information in October 2011 and we have no information they could not have obtained information, particularly with the availability of Section 220 litigation in Delaware, long before they filed suit.

### b. Fraudulent concealment

The Investors also do not meet their burden of showing tolling based on fraudulent concealment; there are no allegations of "an affirmative act of actual artifice" by Invicta, Mr. Sheymov, or any of its Directors to either prevent the Investors from "gaining knowledge of material facts or [lead] [Investors] away from the truth." The Investors cite bare allegations in the fraud and negligent misrepresentation counts reciting the elements of the claims. There are no allegations Mr. Sheymov or Invicta intended to put Investors "off the trail of inquiry" or conceal Invicta's financial status.[80]

### c. Equitable tolling

The Investors repeat the same reasons in support of equitable tolling, contending they reasonably relied on the competence and good faith of Mr. Sheymov and Invicta. Investors "must plead specific facts to demonstrate [their] reliance on a self-dealing fiduciary, and that this reliance prevented [them] from being on inquiry notice of the wrongs perpetuated by its

fiduciary."[81]   Investors' fraud and negligent misrepresentation claims allege representations in the 2006 Invicta business plan through the 2009 private placement memorandum are not true and made to induce the Investors to rely and act on them. They do not go beyond the bare allegations all the statements in every document from 2006 through 2009 are "not true."  Investors fail to plead facts sufficient to support equitable tolling.

### 3. Even if not time-barred, the Investors fail to plead reliance to support fraud and negligent misrepresentation claims with particularity.

Even assuming we found the Investors pleaded facts supporting tolling of the statute of limitations, we must still dismiss their fraud and misrepresentation claims as they do not plead facts sufficient to plead reliance or fraud with particularity. The laws of Delaware, Virginia, Missouri, and Kansas all require reliance as an element of fraud[82] and negligent misrepresentation.[83] The Investors fail to plead reliance on representations made by Mr. Sheymov and Invicta after November 2009. There are no allegations Investors took any action in reliance on any statements after Marshal Simpson's last investment in November 2009. To the extent the claims are based on fraud and negligent misrepresentations made after November 2009, they fail to state a claim under Rule 12(b)(6) and are dismissed.

For the reasons explained in Judge Robinson's April 19, 2017 opinion dismissing the Investors' fraud and negligent misrepresentation claims against Mr. Esrey, we find the Investors similarly failed to meet Rule 9(b) and 8(a) in their claims against Invicta and Mr. Sheymov. The dismissed allegations against Mr. Esrey are identical to the allegations against Mr. Sheymov with his name simply plugged in for Mr. Esrey's name. The Investors fail to identify which statements made by Mr. Sheymov were false, how, and why they are false.[84] Similarly, while the Investors identify a series of representations made by Invicta beginning with its 2006 business plan through its 2009 private placement memorandum, they fail to identify which statements are false

and how and why they are false. Like Judge Robinson, we find the Investors' allegations are threadbare recitals of the elements of fraud and negligent misrepresentation.[85]

Judge Robinson granted Mr. Esrey's motion to dismiss the fraud and negligent misrepresentation claim without prejudice. The Investors elected not to amend their complaint to cure deficiencies. During oral argument, the Investors' counsel candidly conceded he knew of no additional facts to plead. The Investors admit wanting discovery to see if they can find fraud. Given counsel's candor and professionalism, we find no basis to allow yet another time period to find facts they admit are not available to them.

## III. Conclusion

In the accompanying Order, we grant Invicta's and Victor Sheymov's motion to dismiss as there are no facts upon which we could allow the Investor's time-barred and purely speculative claims of fraud based on representations years ago to proceed into discovery.

---

[1] ECF Doc. No. 1.

[2] Marshal T. Simpson, a Missouri resident, is the trustee and beneficiary of the Marshal T. Simpson Trust. *Id.* at ¶ 3. Donald S. Simpson, a Kansas resident, is the trustee and beneficiary of the Donald S. Simpson Trust. *Id.* at ¶ 4. Christopher Boyd is a Kansas resident. *Id.* at ¶ 5.

[3] *Id.* at ¶ 6.

[4] *Id.* at ¶ 7.

[5] *Id.* at ¶¶ 13-15.

[6] *Id.* at ¶ 19.

[7] *Id.* at ¶¶ 20-24.

[8] *Id.* at ¶¶ 25-29.

[9] *Id.* at ¶¶ 30-33.

[10] *Id.* at ¶ 34.

[11] *Id.* at ¶ 36.

[12] *Id.* at ¶¶ 36-43.

[13] *Id.* at ¶ 44.

[14] *Id.* at ¶ 45.

[15] *Id.* at ¶ 46.

[16] *Id.*

[17] *Id.* at ¶ 47.

[18] *Id.* at ¶ 48.

[19] *Id.* at ¶ 49.

[20] *Id.* at ¶¶ 50-52.

[21] *Id.* at ¶¶ 53-60.

[22] *Id.* at ¶¶ 61-63.

[23] *Id.* at ¶ 64.

[24] *Id.* at ¶ 66.

[25] *Id.*

[26] *Id.* at ¶ 67.

[27] *Id.* at ¶¶ 68-70.

[28] *Id.* at ¶ 70.

[29] *Id.* at ¶ 71.

[30] *Id.* at ¶¶ 72-73.

[31] *Id.* at ¶¶ 71-79.

[32] *Id.* at ¶ 74.

[33] *Id.* at ¶ 75.

[34] *Id.*

[35] *Id.*

[36] *Id.* at ¶¶ 76-77.

[37] *Id.* at ¶ 67.

[38] *Id.* at ¶ 79.

[39] *Id.* at ¶ 80.

[40] *Id.* at ¶¶ 90-92.

[41] *Id.* at ¶ 82.

[42] 8 Del.C. § 220. Section 220(b) of Delaware's General Corporation Law provides: "Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from: (1) The corporation's stock ledger, a list of its stockholders, and its other books and records; and (2) A subsidiary's books and records …" 8 Del.C. § 220(b)

[43] ECF Doc. No. 1 at ¶ 16.

[44] *Id.* at ¶ 17.

[45] *Id.* at ¶ 18.

[46] ECF Doc. No. 35.

[47] ECF Doc. No. 40.

[48] ECF Doc. Nos. 50, 51. Investors had not served Mr. Sheymov and Invicta had not responded at the time Directors Esrey, Hallman, and Woolsey moved to dismiss before Judge Robinson.

[49] *Marshal T. Simpson Trust v. Invicta Networks, Inc.*, No. 16-173, ___ F.Supp. 3d ___, 2017 WL 1424944 (D.Del. Apr. 19, 2017).

[50] ECF Doc. No. 62.

[51] ECF Doc. No. 66, 78.

[52] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[53] Counts I and II allege breach of fiduciary duty and negligence against "all Individual Defendants."

[54] Counts III and IV and V and VI allege fraud and negligent misrepresentation against Invicta and Mr. Sheymov.

[55] Under Delaware's law of the case doctrine, "'[o]nce an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration.'" *Gibbs v. Coup*, No. 14-790, 2017 WL 2493785, at *3 (D.Del. June 8, 2017) (quoting *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982)).

[56] *See* Investors' brief in opposition at 1 (ECF Doc. No. 91).

[57] Del. Code Ann. tit. 10, § 8106 (West 2017); *Vichi v. Koninklijke Philips Elec., N.V.*, 85 A.3d 725, 788 (Del.Ch. 2014).

[58] Va. Code Ann. § 8.01-243 (West 2017).

[59] Kan. Stat. Ann. § 60-513 (West 2017).

[60] Mo. Ann. Stat. § 516.120 (West 2017); *Ellison v. Fry*, 437 S.W.3d 762, 769 (Mo. 2014).

[61] *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (citing *LeJenue v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)).

[62] *Gavin v. Club Holdings, LLC*, No. 15-175, 2016 WL 1298964, at *3 (D.Del. Mar. 31, 2016) (citing *Norman v. Elkin*, No. 06-5, 2007 WL 2822798, at *3 (D.Del. Sept. 26, 2007), *aff'd*, 860 F.3d 111 (3d Cir. 2017)); *David B. Lilly Co., Inc. v. Fisher*, 799 F.Supp. 1562, 1568 (D.Del. 1992), *aff'd* 18 F.3d 1112 (3d Cir. 1994) ("Generally, statutes of limitations are deemed to be procedural for conflict of law purposes and the Court would apply its own state's statute of limitations.") (citing *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 517–18 (1953); *Guar. Trust Co. v. York*, 326 U.S. 99 (1945)).

[63] *Gavin*, 2016 WL 1298964, at *3 (citing *Juran v. Bron*, No. 16464, 2000 WL 1521478, *10 (Del. Ch. Oct. 6, 2000)). In *Gavin*, Judge Andrews applied Delaware's three-year statute of limitations to the Plaintiff Trustee's state law claims including fraudulent misrepresentation and inducement and negligent misrepresentation over the statutes of limitations of Colorado and Florida.

[64] *TL of Florida, Inc. v. Terex Corp.*, 54 F.Supp. 3d 320, 326-27 (D.Del. 2014) (citing *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 494 (3d Cir. 1992)).

[65] Del.Code Ann. tit. 10, § 8121 (West 2017).

[66] *Id.*

[67] The Investors rely on Delaware's tolling doctrines.

[68] *Gregorovich v. E.I. du Pont de Nemours*, 602 F.Supp. 2d 511, 518 (D.Del. 2009) (footnotes omitted) (citing *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007)).

[69] *Id.* at 519 (citing *In re Tyson Foods, Inc.* at 585).

[70] *Id.*

[71] *Smith v. Whelan*, No. 11-1188, 2013 WL 3169373, at * 2 (D.Del. June 21, 2013) (footnote omitted) (quoting *Eluv Holdings(BVI) Ltd. v. Dotomi, LLC*, No. 6894, 2013 WL 1200273, at *7 (Del.Ch. Mar. 26, 2013)).

[72] *Smith* at *2 (quoting *Smith v. McGee*, No. 2101, 2006 WL 3000363, at *3 (Del. Ch. Oct. 16, 2006)).

[73] *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 525 (Del. Ch. 2005) (citing *In re Dean Witter P'ship Litig.*, No. 14816, 1998 WL 442456, at *6 (D. Del. July 17, 1998)); *Eni Holdings v. Kbr Grp. Holdings*, No. 8075, 2013 WL 6186326, at *11 (Del. Ch. Nov. 27, 2013) (citing *State ex rel. Brady*, 870 A.2d at 524-25)).

[74] *In re Tyson Foods, Inc.*, 919 A.2d at 584.

[75] *In re Tyson Foods, Inc.*, 919 A.2d at 585 (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456 at *5; *Ruger v. Funk*, No. 93C-04-210, 1996 WL 110072, at *2 (Del. Super. Jan. 22, 1996)).

[76] *In re Tyson Foods, Inc.*, 919 A.2d at 585.

[77] *Id.* (citations omitted).

[78] *Id.* (quoting *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6).

[79] ECF Doc. No. 1 at ¶¶ 16-18, 68-69, 71, 73-76, 79-80.

[80] *Machala v. Boehringer Ingelheim Pharm., Inc.*, No. N16C-12-231, 2017 WL 2814728, at *6-*7 (Del. Super. June 29, 2017).

[81] *Eni Holdings, LLC*, 2013 WL 6186326, at *13.

[82] Elements of fraud:

Delaware: "(1) a false representation made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) causally related damages to the plaintiff." *Vichi,* 85 A.3d at 773 (citation omitted).

Virginia: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance thereon by the party misled, and (6) resulting damage to the party misled." *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014).

Missouri: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the

person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Trimble v. Pracna*, 167 S.W.3d 706, 712–13 (Mo. 2005).

Kansas: "(1) false statements were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them." *Kelly v. VinZant*, 197 P.3d 803, 808 (Kan. 2008).

[83] Elements of negligent misrepresentation:

Delaware: "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information." *Vichi*, 85 A.3d at 822 (citation omitted).

Virginia: Negligent misrepresentation is construed as constructive fraud requiring "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of ... reliance upon the misrepresentation." *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782 (Va. 1996)).

Missouri: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010).

Kansas: "One who, in the course of any transaction in which he or she has a pecuniary interest, supplies false information for the guidance of another person is liable for damages suffered by such other person caused by reasonable reliance upon the false information if: (1) the person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; (2) the person who relies upon the information is the person for whose benefit and guidance the information is supplied; and (3) the damages are suffered in a transaction that the person supplying the information intends to influence." *Stechschulte v. Jennings*, 298 P.3d 1083, 1097–98 (Kan. 2013) (citation omitted).

[84] *See Marshal T. Simpson Trust,* 2017 WL 1424944, at *4.

In the Directors' motion to dismiss, Mr. Esrey argued Missouri law applies to the fraud and negligent misrepresentation claim. The Investors did not disagree, and Judge Robinson applied Missouri law to her Rule 12(b)(6) analysis of the fraud and negligent misrepresentation claims against Mr. Esrey.